JOHN S. CURNEW vs. ASHTON LEE.

Essex. November 3. — 24, 1886. DEVENS, W. ALLEN, & GARDNER, JJ., absent.

A petition for a mechanic's lien, under the Pub. Sts. c. 191, cannot be maintained for work done in making slight changes in a building, which is merely incidental to work in putting in a machine which is personal property, nor for the work on the machine.

PETITION to enforce a mechanic's lien, under the Pub. Sts. c. 191. Trial in the Superior Court, without a jury, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The petitioner, a carpenter and builder, performed the labor stated in his petition, beginning on February 23, 1884, and ceasing on March 19, 1884; and the prices for such labor, stated in the petition, were reasonable. A certificate, containing a statement of said labor and the prices thereof, together with a just and true account of the same and of all credits, was duly filed in the registry of deeds on April 18, 1884.

The premises described in the petition, upon which the petitioner performed said labor, are situated in Methuen, and consisted of a building used by the partnership of Lee, Blackburn, and Company, for the manufacture of chemicals and glue. The respondent was a member of said partnership, and the owner of the land on which said building is; and said land, when the petitioner's labor was performed, was leased by the respondent to Lee, Blackburn, and Company.

Prior to January, 1884, one Jennings was the patentee of a machine and apparatus for drying glue, by a quick process, and Lee, Blackburn, and Company had contracted with Jennings to put into their said factory one of his drying machines; but, after the same had been put into said factory, in the summer of 1883, and applied to the drying of glue, it was not effective for that purpose, and Lee, Blackburn, and Company, in January, 1884, sought to have that machine replaced by a machine more effective for the purpose of drying glue. When Lee, Blackburn, and Company applied to Jennings for a new drying machine, a corporation, the Jennings Machine Company, had become, by

purchase, the sole owner of Jennings's rights as patentee of said drying machine. The Jennings Machine Company agreed to sell to Jennings castings and apparatus necessary for such a drying machine as Lee, Blackburn, and Company required of Jennings, if he would put into said factory one of the Jennings patent drying machines, which would be satisfactory to Lee, Blackburn and Company. Jennings agreed to put into said factory such a machine and thereupon procured of the Jennings Machine Company parts of a drying machine which was in a factory in Lawrence, and other castings from Boston, paid for the labor and cost of removing the same to said factory of Lee, Blackburn, and Company, and, through one Weeks, employed the petitioner to do the carpenter's work and furnish stock necessary to put a satisfactory drying machine into said factory. The petitioner's labor stated in his petition was all performed under an employment by Weeks in behalf of Jennings, and under the supervision and direction of Weeks, who was in no respect in the employ of the respondent, or of Lee, Blackburn, and Company; and Weeks took and kept a daily account of said labor. The labor was performed by the petitioner with the knowledge of the respondent and of Lee, Blackburn, and Company, their consent to the same not being expressly asked, or expressly given, but such knowledge did not extend to the terms, times, or limits of such labor, or to any arrangement or contract of Weeks with the petitioner in relation to the same. The labor of the petitioner, as stated in his petition, was, subject to the conditions and qualifications before stated, performed with the implied consent of the respondent and of Lee, Blackburn, and Company.

The petitioner's labor was performed in a shed attached to Lee, Blackburn, and Company's factory on the respondent's land, and said shed was constructed to cover machinery and to be used as a drying room; it had a tar and gravel roof, was clapboarded, one side of the inside was sheathed, and the ceiling had been lathed and plastered to make it fit for Jennings's previous machine. The parts of said drying machine procured by Jennings of the Jennings Machine Company, and put by him into said shed under his contract with Lee, Blackburn, and Company, consisted of a blower, fans, pulleys,

shafting, and belting; and the petitioner's labor in adjusting the same, for the purpose of drying glue, consisted in patching holes in sheathing, removing a false floor, — such holes and false floor having been used in connection with the drying machine put into said shed in 1883 by Jennings, and taken out because it was not satisfactory to Lee, Blackburn, and Company, — constructing wooden vertical exhaust pipes along the walls, wooden horizontal air-pipes, double sheathed with paper between the sheathing, the materials of which were in part sheathing remaining from the former drier, and in part new sheathing furnished by the petitioner, fastened and adjusted to the other machinery by nailed cleats, nailed shelves, and nailed brackets. The horizontal air-pipes ran beneath the centre of the floor, through which holes were cut by which the air passed up to fans placed over it in the centre of the room. The pipes were not otherwise connected with the fans or running machinery. The arrangement of the fans, shafting, pipes, &c., was planned expressly for this building by a draughtsman sent for the purpose by Jennings. If removed to another building, of a different shape, the several parts would be rearranged therefor, the parts being increased or decreased in number as circumstances might require.

The petitioner rendered a bill for his labor, the same stated in his petition, and for material furnished by him, and used in connection with said labor in said shed and upon said drying machine, to the Jennings Machine Company, and was paid for said materials by some person or persons, whose names were not disclosed at the trial. The drying machine, in relation to which the petitioner performed the labor stated in his petition, could have been taken out of said shed and factory, without injury to the same, or the destruction of any part of these structures in their walls, roofs, or frames, but not without injury to and the substantial destruction of the wooden exhaust pipes, airpipes, and their supports, constructed by the labor stated in the petition.

Upon the above facts, the judge found that the petition could not be maintained; and ordered judgment for the respondent. The petitioner alleged exceptions.

*C. U. Bell,* for the petitioner.

*J. P. Sweeney,* for the respondent.

C. ALLEN, J.   Upon the facts stated, it might well be found that the drying machine was understood by all the parties to be personal property and removable, that the petitioner undertook his job as a job upon personal property, that any work done by him which, in a literal sense, would be an alteration of the building, was merely casual and incidental to the principal work of putting in the machine, and that it was not separate work in the alteration or repair of the building which could be distinguished from his work upon the machine.   His statement was not filed till the thirtieth day after he got through with his job. It does not even appear that any such work which, literally considered, amounted to an alteration of the building, was done within thirty days before filing the statement.   Certainly, work done in making slight changes in a building, which work is merely incidental to work on personal property, even if itself protected by lien, would not have the effect to make the lien available for the work on the personal property.   But, we think, such work does not of itself fall within the meaning of the statute.   Pub. Sts. c. 191, §§ 1–6.          *Exceptions overruled.*